# Hopkins, Administrator v. Byrley Supply Company, et al.

(Decided March 24, 1925.)

## Appeal from Bell Circuit Court.

Executors and Administrators—Evidence Held Not to Sustain Allowance of Claim Against Estate for Alleged Unpaid Wages Due Claimant.—Evidence held not to sustain allowance of nephew's claim against deceased's estate for alleged unpaid wages for work in mine owned by deceased.

JAMES M. GILBERT for appellant.

E. F. BAKER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In a suit to settle the estate of Robert S. Bingham, deceased, a claim was allowed James Bingham in the sum of $3,450.00 from which this appeal results.

Several grounds of reversal are urged, but we will consider only the question of the sufficiency of the evidence.

Robert S. Bingham owned a coal lease and in the year 1917 opened a coal mine and operated it until his death in 1920. This occurred after an illness of only a few days. His nephew, James Bingham, worked for him during that time as bank boss and blacksmith, though deceased had general control. After his death James Bingham took possession of his personal property, including wagons, teams and tools, claiming ownership thereof—that Robert had given same to him in payment for work and labor.

In a suit of claim and delivery the administrator of the estate recovered those articles, and claim was made for the same services in the present suit.

James Bingham testified as to the transaction between him and his uncle, and objections to his depositions were overruled by the court. Aside from this manifestly incompetent evidence it is shown by several of the laborers that James Bingham did perform the services set out and that such services were reasonably worth $150.00 per month, and the witnesses had not seen him paid therefor.

Three witnesses testify to conversations with the deceased in which he admitted being indebted to James Bingham for these services. One of these, a brother-in-law of claimant, testified that a few days before his death, decedent told him that he still owed him (Jim) and was going to pay him when he got able; he did not tell how much, but said he was unable to pay him and hoped to pay him every cent as soon as times got better.

Another work hand claims to have heard a conversation between James Bingham and Robert Bingham the day before the latter was taken ill. On direct examination he testified that James Bingham asked Robert about when he was going to pay him what he owed him; that Robert said he had spent all his money and said, 'You have got the mules and when we get started up to working again I will try to pay you the rest,' and ''Jim says,'' 'Well you have the book and know how much you owe me,' and old Bob says to Jim, '$2,400.00 or $2,500.00.' . . . ''He said he owed him $2,400.00 or $2,500.00 besides the mules.''

On cross-examination, without any attempt to confuse the witness, counsel for the administrator had him to state carefully all that was said in that conversation. He answered with particularity, and in so doing omitted all reference to the books, all reference to any inquiry as to how much he owed Jim and all reference to the statement on the part of deceased that he owed him $2,400.00 or $2,500.00, either besides the mules or at all.

This answer was read to him by the stenographer and he affirmed that it was all that he heard; though again on redirect examination he was asked as to the amount of the debt and the mules, and reiterated his statements as to them. In explanation of his inconsistent statements he said, "I understood from him (attorney for administrator) that he wanted to know if me and Jim was plotting."

The third witness claims to have had a conversation with decedent in the town of Pineville in which he was asking deceased to go on a note at the bank for him and he declined and told him that he was indebted to Jim Bingham for about $2,400.00 and that he would not be worth anything on the note.

It is not shown that James Bingham had any independent means upon which he could have subsisted during the time. No reason is shown why Robert should have paid the other laborers and not have paid him. If Robert was unable to pay him no reason is shown why he continued to labor without compensation. Nor is any reason shown why deceased should have been selecting the witnesses named and confiding to each singly the facts recited.

That others did not see him paid is of little, if any, evidentiary value. Eliminating the evidence of James Bingham, and considering the unsatisfactory, evasive and conflicting testimony of those who testify as to the statements made by Robert Bingham in connection with the unreasonable and improbable character of the claim and the other circumstances mentioned, we do not think the allowance sustained by the evidence.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.